GLADNEY, Judge.
Tennessee Gas Transmission Company has appealed from a judgment awarding the plaintiff, John T. Bean, the sum of $480.00 for land and timber damaged by salt water from an injection line used in connection with operations in the Lisbon Oil Field in Claiborne Parish. Through agreements of counsel made prior to trial, certain controversial issues were disposed of and as a result the determination of quantum remained as the sole issue presented to the trial court.
As disclosed by the established facts the salt water injection line was three inches in diameter and carried salt water under high pressure. It was laid across 1,600 feet of plaintiff’s property in September or October of 1959, and thereafter sixteen or more breaks, blowouts or leaks occurred at various times and some of these breaks, prior to being repaired, permitted the salt water to be sprayed upon young trees and land in the immediate vicinity. The discharge of salt water created six holes which were described as being several feet deep and a foot or more in diameter. When the damage was occasioned there was only a negligible amount of merchantable timber on plaintiff’s property for that with value had recently been cut by Jack Crane under contract from plaintiff, and all commercial species having a diameter above five inches had been removed. Prior to trial use of the offending pipeline was discontinued and a new line constructed to avoid further damage to plaintiff’s property.
In arriving at the award the judge a quo gave the following explanation:
“ * * * expense of repairing the actual damage around the pipeline, including earth moving and terracing, the planting of pine seedlings at a time when soil will take them, is in the amount of $200.00 * * * $200.00
“Four acres of land at $7.00 per acre per year being a total of $28.00 per year for a period of ten years $280.00
“Total $480.00”
Counsel for appellant assigns error to the court’s ruling in that the award was predicated upon a personal investigation by *316 the judge and the court’s failure to accord proper weight to the testimony of Henry L. Bango and Richard Kirk Speairs, Jr., who were experts in their chosen fields.
Proof as to damage sustained is derived exclusively from the testimony of several witnesses: Jack Crane, timber buyer and estimator, and also experienced in earth moving of bulldozer work; Henry L. Bango, a consulting forester; and Richard Kirk Speairs, Jr., soil analyst. The written reasons for judgment by the district judge reveal that counsel errs in assuming the decision of which he complains is based upon the court’s personal examination of the damaged property.
Jack Crane testified damage to merchantable timber was very small but the salt water killed a good many trees below merchantable size. He arrived at a figure of $280.00 due to salt water penetration over an area of about four acres. He was of the opinion that timber would not grow for ten years, and estimated plaintiff’s annual loss therefrom at $28.00, testifying that an acre of land under normal conditions would produce timber growth of the value of $7.00. Crane testified the expense of restoring the land by replacing dirt in the holes and leveling would cost $60.00 to $75.00, and this work should be done with the use of bulldozers at $15.00 per hour. He also stated he tasted of the soil at the locus and it definitely tasted of salt. He did not profess to be a soil analyst and his opinion in this respect must be disregarded. His finding as to the quantity was the result of casual inspection and not measurement of land.
Henry L. Bango, an exceptionally well qualified forester testified as to his qualifications and that he is actively engaged in work affecting forestry management of 120,000 acres. With reference to plaintiff’s damage, he testified he made a count of all trees with the appearance of having been affected injuriously from any cause and as a result, counted eighty-four trees of which number fifteen showed signs of life by leafing out; thirteen were of pulpwood size or trees froih six inches to ten inches and twelve inches in diameter at the stump; and of the latter group, two of these were nine inch trees, four were eight inch trees, three were six inch trees and four were five inch trees. He estimated that such merchantable timber would yield a half cord of pulpwood, worth $2.50 at the maximum price, delivered. The witness said he stepped off the area affected by the salt water damage, and it amounted to one-half acre. The land is described as having a slope of six to eight per cent toward the east and that in consequence the salt water which escaped from the line rapidly ran off and leached out or was dissipated through rainfall.
Dr. Speairs appeared to be well qualified as an expert soil analyst and testified that sufficient salt was not disclosed in the soil analysis made by him to affect the growth of pine. He and Bango testified they saw innumerable small seedlings growing on the soil which had been subjected to the salt water.
As disclosed by the testimony of Crane, Bango and Speairs, plaintiff has proven entitlement to no more than nominal monetary damages. His own witness, Crane, acknowledged the dollar and cent loss arising from injury to trees of a commercial character was negligible. He based his estimated loss of $280.00 entirely on his opinion the soil by reason of salt contamination would not allow growth of pine trees thereon until after the lapse of a period of ten years. The soil analysis by Speairs, however, shows the fallacy of the opinion, as also does the testimony of Speairs and Bango to the effect that pine seedlings had sprouted in the damaged soil and were actually growing. Crane’s testimony does establish that it would cost plaintiff from $60.00 to $75.00 to restore his land to its prior normal condition by filling and leveling the holes so created. Bango’s estimate of $2.50 for loss of pulpwood sized trees is uncontroverted. Bean also sustained the *317 loss of seventy-one immature pine trees, the value of which was not fixed by Bango or Crane. Further, the testimony of Speairs shows there was an abnormal deposit of salt on the land, though not so concentrated as to prohibit all growth of pine seedlings. It is generally known such a soil condition deters growth even though the toxic effect does not prohibit all growth.
The evidence adduced impels a finding that the award of the trial court is excessive, and should be reduced to One Hundred ($100.00) Dollars, comprising the following items, viz.: commercial pulpwood $2.50; restoring land $67.50; immature trees and soil contamination $30.00.
For the reasons hereinabove set forth, the judgment from which appealed is amended by reducing the same to One Hundred ($100.00) Dollars, and as so amended, is affirmed. Plaintiff is taxed with costs of the appeal only.